[Crim. No. 32167. Second Dist., Div. Five. Jan. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
NICK JOE MARQUEZ, Defendant and Appellant.

**COUNSEL**

Monroe & Riddet and Keith C. Monroe for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roger W. Boren and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—Following a preliminary hearing, defendant Marquez was charged by information with the sale of heroin in violation of Health and Safety Code section 11352. Defendant was convicted of that charge in a jury trial and appeals, contending erroneous admission of evidence by the trial court merits reversal.

At the trial Officer McConnell testified he was telephoned by a Henry Ramos on January 28, 1976, pursuant to an earlier conversation[1] wherein McConnell suggested Ramos contact the officer if he had narcotic traffic information.

After the phone call Ramos came into the police station and while there, he called someone named Nick or Nicky. Pursuant to the phone call, Deputy Araiza, as an undercover buyer, and Ramos drove to the Beverly Bowling Alley in Montebello in an unmarked Chevrolet Monte Carlo. Deputy Araiza testified that the defendant, Nick Marquez, met them there, handed over a package later analyzed as containing heroin,

---

[1]This conversation took place while Ramos was in custody on a narcotics charge.

and was arrested as he took hold of $600 cash being offered by the deputy.

Ramos testified at defendant's preliminary hearing that he was the one who directly arranged to sell a "piece" of heroin to Deputy Araiza not knowing he was dealing with a police officer. He further testified that he placed the heroin in defendant's trunk without defendant's knowledge and got defendant to drive to the meeting place under pretext. Ramos also claimed he himself reached into the trunk and delivered the heroin to Araiza to the surprise of defendant. Defendant recited a similar story when he took the stand.

In the time between the preliminary hearing and the trial of defendant, Ramos was convicted of perjury for this testimony. At defendant's trial, Ramos was unavailable as a witness because he claimed the Fifth Amendment privilege against self-incrimination. His preliminary hearing testimony was then read into the record by the defense. The prosecution then sought to impeach Ramos' former testimony with testimony from Officer McConnell that Ramos, on two occasions prior to the preliminary hearing, had called him to say that his life was threatened if he (Ramos) did not do defendant's "joint" time.[2] Defendant objected on the grounds that said testimony was hearsay and prejudicial. The court allowed in the testimony and stated that its prejudicial effect did not outweigh its probative value.

ISSUES

Defendant appeals the judgment contending: (1) The evidence of purported threats on the life of Ramos was inadmissible both as hearsay and violated the constitutional right of confrontation. (2) The same testimony was inadmissible under principles of collateral estoppel.

1. ■ We first address defendant's collateral estoppel contention. Defendant argues that the issue of duress was raised as a defense in Ramos' perjury trial and it was necessarily determined there that Ramos was not excused by any coercion or else he would not have been found guilty of perjury beyond a reasonable doubt. While defendant did object to admission of Officer McConnell's testimony, it was not on the ground

---

[2]The prosecution offered this testimony to show Ramos' bias and motive. Evidence Code section 1202 provides that any evidence offered to attack the credibility of a hearsay declarant is admissible if it would have been admissible if the declarant had been a witness. Evidence to show bias and motive is admissible to attack credibility under Evidence Code section 780, subdivision (f).

of collateral estoppel. An issue will not be reviewed on appeal absent an objection in the court below on the same grounds urged on appeal. (*People* v. *Douglas,* 66 Cal.App.3d 998, 1003 [136 Cal.Rptr. 358].)

Furthermore, contrary to defendant's arguments, the record of Ramos' perjury conviction trial does not support his statement that the duress issue was raised and necessarily rejected. Any position we might take on this issue would be based on speculation and therefore unsupported. We therefore reject defendant's argument that reversal is required because of collateral estoppel.

2. ■ Defendant's other argument admits the defense introduced permissible hearsay evidence (Ramos' perjured testimony) because he was unavailable as a witness. In normal circumstances, Evidence Code section 780, subdivision (f),[3] permits the introduction of extrinsic evidence to show bias or motive of a witness. (*People* v. *Chacon,* 69 Cal.2d 765, 780 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].) The court below made it clear in its ruling admitting the evidence of purported threats that it was appropriate for this purpose.

Defendant, however, states: "The purpose of [Evidence Code] section 1202, *People* v. *Beyea* (1974) 38 Cal.App.3d 176, 193 [113 Cal.Rptr. 254] holds, is to permit the party against whom a hearsay statement has been admitted to at least impeach the statement '*inasmuch as he was denied the opportunity of cross-examination.*' " That purpose is, on its face, not applicable in this case, for the prosecution had a full right of cross-examination of Ramos at the preliminary examination. Here, defendant utilized the hearsay evidence of Ramos' preliminary hearing testimony and even though that testimony is perjured, defendant amazes the court by contending there is no purpose to be served by the officer's impeachment of Ramos' credibility under section 1202. Defendant's mistake is in misplaced emphasis on language in *People* v. *Beyea,* 38 Cal.App.3d 176, 193 [113 Cal.Rptr. 254], where the court quoted *Am-Cal Investment Co.* v. *Sharlyn Estates, Inc.,* 255 Cal.App.2d 526, 542 [63 Cal.Rptr. 518], as to the rationale behind Evidence Code section 1202: " 'The purpose of allowing extrajudicial inconsistent statements is to be fair to the party *against whom the hearsay was received inasmuch as he was denied the opportunity of cross-examination; . . .*' " (Italics in original.) Defendant runs with that language to the conclusion that the prosecution has no section 1202 right to impeach the hearsay declarant, Henry

---

[3]See footnote 2, *ante.*

Ramos. This is not the holding in *Beyea* where the court limited itself to finding section 1202 cannot be used to impeach one's own witness. Defendant's interpretation of this code section would result in unjustifiable extraordinary treatment of hearsay admitted under the former testimony exception: It would be unimpeachable. It would be elevated in credibility over live testimony. (See 22 UCLA L.Rev. 452, 454.) Such singular treatment of former testimony hearsay departs for no good reason from the spirit and language of section 1202 and the illuminating case of *People* v. *Collup,* 27 Cal.2d 829 [167 P.2d 714], section 1202's judicial predecessor. In *Collup,* the court permitted impeachment of a hearsay declarant's former testimony, while recognizing ". . . the goal of all judicial proceedings is to bring before the trier of fact all pertinent evidence." (*Collup,* at p. 836.)

Defendant could not have a weaker case to argue for special treatment of former testimony hearsay than here where the testimony is perjured; the specter of a declarant's perjured testimony being admitted pursuant to Evidence Code section 780 and going unimpeached because of some prior opportunity to cross-examine convinces this court the defendant is wrong. Section 1202 of the Evidence Code was drafted to ensure that the unavailability of a hearsay declarant would not prevent introduction of relevant evidence which would be admissible if the declarant was in court; and, the prosecution here would have been able to impeach Ramos in the manner they did if he had repeated his preliminary hearing statements in person at the trial.

Furthermore, the testimony was admissible as nonhearsay under Evidence Code section 1250, subdivision (a)(2) which provides:

"(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:

". . . . . . . . . . . . . . . . . . .

"(2) The evidence is offered to prove or explain acts or conduct of the declarant." As the legislative Committee comment to section 1250 notes, a hearsay declarant's statements narrating threats may be used as circumstantial evidence of his state of mind, i.e., fear, when the fear is relevant to explain his subsequent conduct.

Section 1252 renders the evidence inadmissible "if the statement was made under circumstances such as to indicate its lack of trustworthiness." Such circumstances are absent here. Nothing in the record indicates that Ramos related the threats to Officer McConnell for any reason other than fear and concern for his own safety.

3. ■ Defendant finally asserts that the unavailability of Ramos deprived him of his right to confrontation under the Sixth Amendment. In *Dutton* v. *Evans,* 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210], the United States Supreme Court held that there was no Sixth Amendment violation where the evidence was not offered for the truth of the matter asserted. (*Dutton, supra,* at p. 88 [27 L.Ed.2d at pp. 226-227].) As pointed out, the evidence was not offered for the truth of the matter asserted (i.e., that threats had been made), but rather as circumstantial evidence of Ramos' state of mind.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 23, 1979, and appellant's petition for a hearing by the Supreme Court was denied April 12, 1979.