[No. A079608. First Dist., Div. Three. Mar. 16, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JARRETT LAMONT JACOBS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.C.

**COUNSEL**

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent

## Opinion

**McGUINESS, J.**—In this case of first impression, we determine that a defendant's prior felony convictions are admissible under Evidence Code[1] sections 1202 and 788 to attack his credibility when, at his own request, his exculpatory statement to the police is admitted into evidence, but he does not testify at trial.

Jarrett Lamont Jacobs (appellant) was convicted by a jury of receiving stolen property in violation of Penal Code section 496, subdivision (a). In a separate court trial, the court found true allegations that appellant had sustained three qualifying "strikes" under the initiative version of the three strikes law and that appellant had served three prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). However, for sentencing purposes, the court struck two of the strikes and all of the prior prison term findings and sentenced appellant to a state prison term of four years (double the midterm for receiving stolen property).

Appellant was tried with a codefendant, Maurice Lawson, who was acquitted of the same offense of which appellant was convicted. Prior to trial, Lawson sought admission of a portion of a statement appellant gave the police, admitting that the vehicle in which the stolen items were located was appellant's. Appellant asked that his whole statement to the police (in which he described how he came into possession of the stolen items) be admitted. After it was admitted, the prosecution sought and received permission from the court to impeach appellant's hearsay statement by introducing evidence of several of appellant's prior felony convictions.

Appellant contends that the court erred in admitting evidence of his prior convictions to impeach his statement to the police and that he was prejudiced by such admission. In the alternative, he seeks reversal based on a claim of ineffectiveness of counsel, contending that counsel should not have sought admission of his statement in light of the probability that it would be impeached by evidence of his prior convictions. We affirm.

### I. Facts

#### A. *Receiving Stolen Property*

Chris Halton testified that he lived in an apartment in Antioch in November 1996. On the evening of November 19, 1996, Halton placed several pieces of yard equipment in a storage unit in the building and secured the

---

[1]Unless otherwise stated, all further statutory references are to the Evidence Code.

unit with a padlock. The next morning, one of his neighbors told him that someone had cut the lock off his unit. Halton investigated and found that his neighbor was correct. His chain saw, gas blower and hedge trimmer were gone. He called the police and made a report. He then went to work in Pittsburg.

Around noon that day, he took a lunch break, going to a Mexican restaurant near his work site. As he left his truck and started toward the restaurant, he was approached by appellant. Appellant and Lawson were standing at the trunk of a green Impala or Caprice parked in the lot. Initially, Halton tried to ignore them, but when he heard appellant say, "I got some equipment I want to sell," Halton said to himself, "This can't be," and approached the green car. Appellant opened the trunk and pulled out Halton's chain saw. Halton also saw his blower in the trunk. Halton decided to buy back his equipment and then call the police. He offered the men $60, but they wanted $150. So, Halton said he would be right back. He left and eventually enlisted the help of some friends before returning to talk to appellant and Lawson again.

When he returned, he used his truck to block appellant's escape. He asked to see the equipment again. When appellant and Lawson opened the trunk, Halton said, "We got a problem here. . . . That stuff that you have in your trunk was mine, and it was stolen from me last night. I filed a police report, and I want it back." Appellant replied that he had purchased the equipment from someone for $100 and offered to take Halton to the seller. Halton said that appellant was not leaving until he got his equipment back. An argument ensued, and the police were called. Statements were taken, and appellant was eventually arrested.

Contra Costa Sheriff's Deputy Linda Reno testified that she was called to the scene of the confrontation between Halton and appellant. She first attempted to determine who owned the property in the trunk of the green car. She confirmed that Halton could describe the equipment with particularity. She also spoke to appellant who admitted that the green car was his. She further testified that appellant had told her that he had purchased the tools that morning from an acquaintance named "Will" for $100. Appellant planned to resell them in order to purchase parts for his car. He indicated that he did not know where Will obtained the tools. Appellant never offered to take Deputy Reno to Will; appellant only knew Will's first name. She also testified that appellant told her that he "didn't exactly know where Will might have gotten the property."

## B. *Admission of Appellant's Statements to Deputy Reno and Evidence of Appellant's Prior Convictions to Impeach Those Statements*

As noted in the introduction to this opinion, Lawson initially asked the court to admit a limited portion of appellant's statement to Deputy Reno—his admission that he owned the green car. Appellant objected to only a portion of the statement's being admitted. The district attorney noted that he did not object to the statement about car ownership being admitted but argued that the rest should be deemed inadmissible because it did not relate directly to the issue of vehicle ownership. The court did not rule immediately on either request, inviting the parties to review the statement in detail before a ruling was made. The issue was rejoined following jury selection. During colloquy, Lawson joined the prosecution in arguing that none of appellant's statement to Deputy Reno, apart from his admission about vehicle ownership, should be admitted. The court overruled both objections and ruled the entire statement admissible.

The subject of the prosecution's using appellant's convictions to impeach his hearsay statement about how he came to possess the tools was initially raised after Deputy Reno testified about that statement. Appellant first objected on the ground of lack of notice, contending that, if the district attorney intended to seek to impeach appellant's hearsay statements by use of his priors, he should have so stated at the time the admissibility of the statement was first being discussed. Appellant then noted that the problem was not one of his creation; it arose only because his codefendant wished to admit a portion of his statement. He further argued that use of the priors was inappropriate under section 1202 (discussed in pt. II.A., *post*). He finally argued that his priors should not be admitted under section 352 because their probative value was vastly outweighed by their prejudicial effect. The court overruled appellant's objections. At that point, Lawson joined in the objections, largely on section 352 grounds, and additional colloquy ensued.

The court ultimately reiterated its ruling that the convictions were admissible. The court rejected appellant's argument that he did not receive proper notice of the prosecutor's plan to use the priors for impeachment. The court noted: "This is a search for the truth, and insofar as the Court is concerned, and when [appellant's] statement comes in with regard to his nonculpability in the case, and that raises the question of his veracity. And the jury should know at least a reasonable amount with regard to that so that it can draw whatever inferences it intends to draw on that issue." The court rejected the concept that all appellant's prior felony convictions were probative of his credibility. It agreed that only theft-related offenses would be admitted. The court also limited the number of offenses the prosecution could prove,

recognizing that "the use of four burglaries runs the risk of having the jury believe that [appellant] is of a bad character . . . ." Accordingly, Lawson, appellant and the prosecutor reached a stipulation which was read to the jurors, informing them that appellant had been convicted of two "theft-related felonies" and that appellant had been convicted of sale or transportation of a narcotic. The jury was also instructed that those convictions were only admitted for the purpose of assisting the jury in determining appellant's credibility.

## II. ANALYSIS

### A. The Trial Court Did Not Err in Admitting Evidence of Appellant's Prior Convictions for Impeachment Purposes

At the outset, it is valuable to note a significant limitation in the arguments advanced by appellant. Appellant does *not* assert that evidence of his felony convictions would not have been admissible to attack his credibility if he had testified at trial. In that regard, he acknowledges that section 788 permits an attack on a witness's credibility by introduction of evidence of his or her having been convicted of a felony.[2] ▮ What appellant does assert is that it was error for the trial court to admit evidence of his convictions to attack his credibility when he did *not* testify. Analysis of that assertion requires us to examine section 1202.

Section 1202 provides that evidence of a "statement or other conduct" of a hearsay declarant which is inconsistent with the evidence presented by the declarant may be introduced to attack the declarant's credibility. It also provides: "Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. (*Ibid.*)"[3]

Taken together, sections 1202 and 788 seem to provide that evidence of prior felony convictions is admissible to attack the credibility of a hearsay declarant. Appellant argues that it is not.

---

[2]Section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." Only felonies which involve "moral turpitude" may be used for that purpose. (*People v. Castro* (1985) 38 Cal.3d 301, 313-317 [211 Cal.Rptr. 719, 696 P.2d 111].)

[3]Section 1202 provides: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had the opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant."

In support of that argument, appellant first notes—and the Attorney General confirms—that no cases have been reported in which the prosecution has attempted to impeach a defendant's hearsay declaration by use of prior felony convictions. Appellant then notes that several cases, including *People v. Stevenson* (1978) 79 Cal.App.3d 976 [145 Cal.Rptr. 301], *People v. Beyea* (1974) 38 Cal.App.3d 176 [113 Cal.Rptr. 254] *(Beyea)*, *People v. Marquez* (1979) 88 Cal.App.3d 993 [152 Cal.Rptr. 200], and *People v. Mayfield* (1972) 23 Cal.App.3d 236 [100 Cal.Rptr. 104], have discussed the use of various devices to impeach hearsay statements made by witnesses who are unavailable at trial. He next asserts that in each case in which impeachment of an out-of-court statement was permitted (or in which the Court of Appeal ruled that the trial court's failure to admit impeaching evidence following introduction of a hearsay statement constituted error) the hearsay consisted exclusively of prior testimony. He contends that in a "case[] such as this, where the hearsay is oral statements of the accused which were not intended at the time they were made to be testimonial [and were] not put into evidence under appellant's oath, fairness to the opponent does not require subjecting appel[l]ant to the devastating impact of impeachment with his prior felonies."[4] Appellant's contentions are without merit.

■   Our first and most important responsibility in interpreting statutes is to consider the words employed; in the absence of ambiguity or conflict, the words employed by the Legislature control, and there is no need to search for indicia of legislative intent. *(Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)   ■   Applying those principles to appellant's first argument, there is nothing on the face of section 1202 which indicates or even remotely implies that its application is to be limited to hearsay statements which take the form of prior testimony, and we decline to read such a limitation into that section. Indeed, the statute could hardly be clearer: "Evidence of a statement *or other conduct* by a declarant [is admissible.] *Any other evidence* offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. . . ." (§ 1202, italics added.)

Appellant argues that the logic undergirding the use of prior felonies for impeachment is somehow linked to the taking of an oath. The rationale urged is as follows: the taking of an oath cloaks the testimony of a witness with an aura of credibility; felons are less likely to take an oath seriously; therefore, only when an oath has been administered before the giving of testimony, should a prior felony conviction be admitted to impeach that

---

[4]At oral argument, he advanced the mirror image of that contention, asserting that it is the fact of an accused's having sworn to tell the truth which makes it fair or appropriate to impeach him with his prior felonies.

testimony. This argument fails for several reasons. First, there is no authority for such a restriction in either statute or case law. Furthermore, as pointed out by the Attorney General in oral argument, statements *not* made under oath are likely to be less reliable than those made under oath because false statements made under oath are subject to prosecution for perjury. Appellant's policy argument that it is unfair or inappropriate to subject him to impeachment by use of his priors when he did not testify under oath is likewise unavailing. Another party to the litigation should not be prevented from legitimate impeachment of damaging evidence because of appellant's decision not to testify. Thus, any form of impeachment—including prior felony convictions—is appropriate to challenge statements regardless of whether they are made under oath. Here, appellant's potentially exculpatory out-of-court statement was admitted over objection by both the prosecution and his codefendant. Because appellant's factual claims about how he came into possession of the tools could not be challenged by way of cross-examination, their validity could only be challenged by way of an attack on appellant's credibility. In that context, the use of the priors was not unfair or inappropriate.

Appellant next argues, based on *Beyea* and portions of the California Law Revision Commission comment to section 1202, that the provisions of section 1202 are only meant to permit impeachment of a hearsay declarant by the party against whom the statement is admitted. He contends that, because his statement was of greatest benefit to the prosecution and because it was not technically admitted "against" the prosecution but was instead admitted under section 356 to "explain or make clear" the statement about car ownership,[5] it was error to admit the evidence of prior convictions to impeach the portion of the statement which dealt with the way he came into possession of the tools. Appellant's arguments lack merit.

We first note that the entire Law Revision Commission comment to section 1202 deals exclusively with the *first* sentence of section 1202. Thus, its use in construing the second sentence of section 1202 is questionable at best. Nonetheless, appellant calls our attention to a portion of the comment which provides: "Section 1202 substitutes for . . . case law a uniform rule permitting a hearsay declarant to be impeached by inconsistent statements in all cases . . . . If the hearsay declarant is unavailable as a witness, the party against whom the evidence is admitted should not be deprived of both his

---

[5]Section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

right to cross-examine and his right to impeach. [Citation.] If the hearsay declarant is available, the party electing to use the hearsay of such a declarant should have the burden of calling him to explain or deny any alleged inconsistencies." (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (1995) foll. § 1202, p. 27.) In *Beyea,* Division Two of this district considered the portion of the Law Revision Commission comment quoted above in the context of an attempt by a prosecutor to use prior inconsistent statements by two witnesses called by the prosecution at the preliminary hearing (and who were unavailable for trial) to impeach portions of the preliminary hearing testimony admitted at trial. Division Two determined that the trial court erred in permitting the prosecutor to do so because the preliminary hearing testimony advanced the prosecution case. (*Beyea, supra,* 38 Cal.App.3d at pp. 192-194.)

We question whether the Law Revision Commission comment to section 1202 considered in *Beyea* is of significance to our analysis in the case at bench because, as noted above, the comment discusses only the prior inconsistent statement or conduct portion of section 1202. Nonetheless, even if we were to accept appellant's assertion that the priors should only have been used to attack his credibility if his statement about acquisition of the tools were beneficial to his case, we would (and do) reject his claim that it was error to admit them. Here, *appellant* sought admission of the portion of his statement which established that he obtained the tools from Will and that he did not know how Will acquired them. The effect of that portion of the statement, if believed, could have been the exoneration of appellant because, to establish a violation of Penal Code section 496, subdivision (a), the prosecution was required to prove that appellant *knew* the property had been stolen. The fact that the prosecutor attempted to turn the statement to his advantage in argument does not affect the fact that it was admitted in an effort to defeat the prosecution case. Thus, it was proper for the prosecutor to try to impeach the statement by the use of priors under section 1202.

One final observation: although not discussed by the parties or the trial court, we must nonetheless consider the effect of article I, section 28 of the California Constitution—"The Victims' Bill of Rights" adopted by initiative in 1982. Subdivision (f) of section 28 deals with the use of prior convictions: "Use of Prior Convictions. Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." Our Supreme Court has determined that subdivison (f), when read in the context of subdivision (d) of section 28 ("Nothing in this section shall affect

any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103"), permits introduction of only those prior felony convictions which involve moral turpitude. (*People v. Castro, supra,* 38 Cal.3d 301, 313-317.) In addition, the court has stated admission of prior felony convictions is subject to trial court discretion under section 352. (38 Cal.3d at p. 312.) However, our Supreme Court has not limited the application of article I, section 28, subdivision (f), in any fashion relevant to our opinion in the case at bench. Thus, even if section 1202 were not part of the Evidence Code, our state Constitution would seem to mandate admission of appellant's prior felony convictions—subject, of course, to the limitations of section 352.

## B. *The Court Conducted an Adequate Section 352 Analysis*

Appellant next argues that the court failed to conduct a complete section 352 analysis. He acknowledges that the court conducted a section 352 analysis but argues that the court "did not weigh the weak value of the hearsay testimony . . . ." He also argues that the court did not take into consideration the "fact that the statement was an admission" and that the jury would be so instructed. He finally asserts that the court should have excluded the priors because the prosecutor did not tell the defense that he would ask to use the priors for impeachment purposes if the entirety of appellant's statement were admitted under section 356. Appellant's arguments are without merit.

Appellant's first two arguments examine the wrong issues. First, the issue the court was asked to consider for section 352 purposes was whether or not considerations of undue consumption of time or the risk of undue prejudice outweighed the probative value of the *priors*—not the statement which had already been admitted. Second, the jury was only instructed that the portion of the statement about ownership of the car—not the exculpatory explanation which was admitted under section 356—constituted an admission.

Appellant's last argument is also without merit. Appellant presents no authority for the proposition he posits—that the prosecution's choice to wait until the potentially exculpatory statement was in evidence before offering the priors for impeachment purposes has section 352 implications—and we decline to create such authority. The court clearly weighed the probative value of the convictions against their prejudicial effect and, in a sense, reduced the prejudicial effect by limiting the number of offenses the prosecution could present to the jury. We see no abuse of discretion.

## C.   *Defense Counsel Was Not Ineffective**

.   .   .   .   .   .   .   :   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III.   CONCLUSION

Our conclusion that evidence of appellant's prior felony convictions was admissible to attack the credibility of his potentially exculpatory out-of-court statement to the police is limited to the facts of this case. We offer no view regarding admissibility of such convictions where a defendant is not the proponent of his own statement.

The judgment is affirmed.

Corrigan, J., and Parrilli, J., concurred.

---

*See footnote, *ante*, page 1444.