Filed 3/15/13  P. v. Pham CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DUNG MY PHAM,<br><br>    Defendant and Appellant. | G046219<br><br>(Super. Ct. No. 09CF0553)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Dung My Pham appeals from a judgment after a jury convicted her of theft with prior convictions. Pham argues there were two evidentiary errors. We disagree and affirm the judgment.

FACTS

Pham bought a Yorkshire Terrier from The Puppy Store (the Store) in the Mainplace Mall (the Mall). The owners Boris Jang and Jisun Lee obtained her contact information.

About one week later, Pham, her sister, Yen Chu, Pham's daughters, and a couple friends went to the Mall. Pham and Chu went to Nordstrom and the girls went to the Store. One of the girls called Chu because the Store does not permit unaccompanied minors to play with the dogs. Chu arrived at the Store first and then Pham, who was carrying her purse and a Nordstrom bag.

After Pham left, Lee noticed four items of puppy clothing, worth a total value of $109, were missing. Jang and Lee watched the surveillance video. The video showed Pham place the items in the Nordstrom bag and leave the Store without paying for the items.

Jang called Pham's cellular telephone. Jang told Pham the video showed her stealing and he asked her to return the items. Pham denied pinching puppy apparel. Jung told Pham that if she did not return the garb, he would call the police. Pham said, "'Okay'" and hung up.

About 10 minutes later, Pham returned to the Store without the items or the Nordstrom bag. Pham again denied she took anything. Jang replied the video showed Pham taking the items and he was calling the police. Pham maintained her innocence and claimed it was a misunderstanding.

Mall security detained Pham while Jang called the police. Chu returned to the Store and offered to pay for the items. Lee told Chu she wanted the items returned and not money. Chu brought back three of the items and later the fourth item.

2

When Officer Daniel Serna responded to the Store, Jang and Lee showed Serna the video. Serna arrested Pham, who waived her rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Pham told Serna she took the items to surprise her daughter but forgot to pay for them. Pham never stated Chu took the items accidentally, although she later made that claim at trial.

Serna asked Lee for a copy of the video. Lee, who thought she was copying the entire incident, copied it onto a compact disk (the CD). Serna took the CD and booked it into evidence.

Several months later, Serna, Jang, and Lee watched the video. They discovered the CD did not contain the entire incident. The CD did not show Pham leaving the Store.

An information charged Pham with second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)) (count 1) and theft with prior convictions (Pen. Code, §§ 666, 484, subd. (a), 488) (count 2). The information alleged Pham suffered theft convictions in 1996, 1998, 2002, and 2008.

At a proceeding before trial, Pham's defense counsel explained there was allegedly a CD that shows Pham taking merchandise from the Store and leaving but the CD the police had did not show that. Counsel stated Jang told his investigator that he had another copy of the CD but he would not give it to him. Jang, who was present in the courtroom in response to a subpoena duces tecum, testified under oath he had searched everywhere but could not find the CD. Jang explained he had seen the footage of the entire incident on the computer but he had not seen the CD that Lee made pursuant to Serna's request. Jang said they could not retrieve the incident from the computer because it is only stored for 30 days.

Months later, Pham filed a motion to exclude admission of the video and to dismiss the case. Pham also filed a motion to exclude evidence of her prior convictions. At a hearing, Pham admitted she suffered her prior convictions. The trial court stated

3

they were deemed admitted and the prosecutor was not to mention them unless Pham testified and they were offered to impeach.

The trial court conducted an Evidence Code section 402 hearing on admission of the video and testimony concerning the video. The prosecutor stated "the crux of the case is the video." Pham's defense counsel stated the CD does not show when Pham entered and exited the Store. Counsel explained this was important to the defense because witness testimony conflicts with Serna's testimony as to whether Pham entered the Store alone or with Chu and a child. Counsel also explained the end of the footage was crucial because it was Chu who left with the Nordstrom bag, not Pham. The prosecutor explained Jang and Lee had the surveillance system in the Store for just two months and this was only the second time they attempted to record footage onto a CD. He stated that after they played the footage for themselves, Serna, and other employees, they tried to copy the footage onto a CD. The prosecutor asserted there was no evidence of intentional wrongdoing. He said, "the best explanation is [Jang] somehow screwed it up accidentally." The prosecutor claimed witnesses could testify as to what they saw on the video. The prosecutor responded to the court the reliability issue was one for the jury. The trial court watched the video as counsel discussed what was occurring. After watching the video, the court mused it was his opinion Pham knelt down and put merchandise in the Nordstrom bag and Chu moved in front of the bag.

Defense counsel then called numerous witnesses. Tara R., who was a friend of Pham's daughter, testified Pham left with her daughter but she did not have a Nordstrom bag. Tara stated Chu left with the bag.

Serna testified he watched the video two or three times. He said Pham entered the store with her daughter and Chu and left with her daughter and Chu. Serna stated Pham carried a Nordstrom bag when she entered the Store and when she left the Store. Serna asked Lee to copy the footage, which she did while Serna was interviewing witnesses, and Lee gave the CD to Serna. Serna booked the CD into evidence the same

4

day, following standard procedures.  On cross-examination by the prosecutor, Serna testified he was not sure Pham entered the Store with her daughter and Chu.  The prosecutor asked the video be played and directed Serna's attention to the 3:15 mark.  The following colloquy occurred:

"[Prosecutor]:  I will start playing.  When you see what appears to be [Pham] enter the store, just let us know and we will stop.

"[Serna]:  Okay.  [¶] . . . [¶]

"[Serna]:  That is [Pham] walking inside the [S]tore with her Nordstrom bag.

"[Prosecutor]:  Okay.  And just for the record, that was about approximately the three minute to three minute 20 second mark, channel one.  [¶]  Officer, you saw her enter alone here, correct, on the footage you just viewed?

"[Serna]:  That's correct.

"[Prosecutor]:  So is it safe to say that based on what you saw, she did not enter the [S]tore with her sister and daughter simultaneously?

"[Serna]:  That's correct.

"[Prosecutor]:  But at some point you do see -- at some point on March 1st when you viewed the video footage did you see [Pham] interact inside the [S]tore with the person who's been identified as her sister to you and her daughter?

"[Serna]:  That's correct.

"[Prosecutor]:  Is that what you meant by that passage in your report when you saw her enter with those two?

"[Serna]:  Yes."

An evidence supervisor with the Santa Ana Police Department testified concerning standard evidence chain of custody procedures and specifically the chain of custody for the CD.

Lee testified Pham entered the Store alone, but she did not see Pham leave because she was in the back of the Store. She explained that based on her recollection of the video, Pham left with everyone else. Lee then explained how she copied the footage onto CDs, one for Serna, one for mall security, and one for herself. She had said it was her second time copying footage onto a CD. Lee believed she copied the entire incident from the time Pham entered the Store to the time she left. She stated that about a year later she learned the CD did not show Pham leaving the Store.

Jang testified he reviewed the surveillance footage. He saw Pham place merchandise in the Nordstrom bag and leave the Store with the bag. Jang stated that about one year later, he searched for a copy of the CD but he could not find it. Jang stated they still had the surveillance equipment.

Nick Morrow, a defense investigator, testified Jang told him to get a copy of the CD from the police. Jang also told him they replaced the surveillance equipment.

A forensic audio video analyst testified for the defense that to record from a hard drive the person must simply establish the time parameters and the machine will record.

Pham's defense counsel argued Serna was not credible because there was conflicting evidence as to whether Pham entered the Store alone and who left with the Nordstrom bag. Counsel also asserted Serna had a duty to ensure the CD contained the entire incident. Counsel argued admission of the CD would violate Pham's due process rights to a fair trial. The prosecutor replied Serna performed his duties by watching the video, gathering the evidence, and complying with standard evidentiary chain of command procedures.

The trial court explained Lee made the CD not Serna and Serna complied with what was standard procedure in viewing the video and collecting the CD. The court stated the CD showed Pham kneeling down and placing merchandise in the

6

Nordstrom bag and what appeared to be Chu blocking Pham from detection. The court opined it was a jury issue and stated it would not exclude evidence based on what might or might not be on the CD.

The trial court granted Pham's defense counsel's request to be heard further. Counsel argued that to allow a witness to testify concerning what was on the complete video was hearsay. The court replied it had anticipated that issue and had been researching the issue. The court stated a video was a writing under the Evidence Code and the issue was whether a person testifying about their observations of the video was hearsay. The court indicated counsel should be ready to proceed on another Evidence Code section 402 hearing the following afternoon.

Pham filed a motion to exclude the CD and all witness testimony concerning the CD. She argued the following: (1) the CD included only a portion of the incident; (2) the CD was not the "best evidence" of what occurred; (3) witness testimony concerning what the footage showed was hearsay; (4) the CD was not properly authenticated; and (5) admission of the CD violated her due process rights and right to a fair trial. Apparently because of time constraints, counsel was not able to flesh out her arguments in his motion. But counsel did argue that although the Evidence Code permits a witness to testify as to the contents of a CD, it violated due process to permit a witness to testify only to selective portions of the CD.

The prosecutor filed a motion to admit the video and witness testimony concerning the video. The prosecutor argued the CD was not inadmissible hearsay because it was not intended to convey a particular meaning to another person. The prosecutor asserted witness testimony regarding the CD was proper lay opinion testimony on the issue of the perpetrator's identity.

At the Evidence Code section 402 hearing, the trial court indicated it had reviewed counsels' briefs and conducted a significant amount of research on the issues before the court. Pham's defense counsel argued that if the court admitted the CD it was

7

admitting the evidence that demonstrated guilt but excluding the exculpatory evidence. Counsel asserted the CD was deliberately altered to delete exculpatory evidence. The prosecutor argued Pham could call witnesses who would testify Pham did not leave the Store with the Nordstrom bag, and defense counsel could make that argument to the jury. The prosecutor asserted surveillance video is routinely admitted because it is not hearsay. Recognizing the prosecutor authenticated the CD pursuant to the Evidence Code, defense counsel argued the CD was incomplete and thus unreliable. The prosecutor countered courts have previously admitted into evidence "snippet[s] of the surveillance footage."

The trial court explained it spent a great deal of time researching and considering the issue. The court began with an Evidence Code section 352 analysis. Pursuant to the Evidence Code and *People v. Hawkins* (2002) 98 Cal.App.4th 1428, the court concluded the CD was not hearsay. With regard to the secondary evidence rule, the court framed the issue as follows: "This relates to the propriety of a witness testifying to the contents of a writing, which is generally precluded under the secondary evidence rule as set out in [Evidence Code] [s]ection 1520 . . . unless the writing has been admitted, and in this particular instance video has been admitted . . . ." The court stated "the actual video is the original, not the CD." The court reasoned witnesses could testify as to what they observed on the original footage because the original footage was lost or destroyed without fraudulent intent. The court ruled the CD was admissible at trial but that its ruling was tentative.

Pham's defense counsel continued to object on Evidence Code section 352 grounds. The trial court explained it had done the balancing test as required by Evidence Code section 352 and determined the CD was relevant and its admission prevented multiple witnesses from testifying they saw Pham leave the Store with the Nordstrom bag. The court added the CD was not confusing or misleading. The court concluded the weight to be given the CD was an issue for the jury. The court patiently allowed defense counsel to make a statement but the court's tentative decision went

8

undisturbed. Before the prosecutor's first witness testified, Pham renewed her objection to admission of the CD on the grounds she argued earlier.

At trial, Serna testified he observed the video and it showed the following: After Pham spoke with the Store owners and employee, Pham walked through the store. As she picked up merchandise, she looked from side to side. Pham then placed merchandise in a Nordstrom bag. Pham left the Store with the Nordstrom bag without paying for the merchandise.

Pham offered testimony that while she was standing near the puppy playpen area she put the Nordstrom bag on the floor, and her daughter wanted to get something to eat, she left the Nordstrom bag in the Store but Chu took the bag. There was evidence Pham had $11,000 cash in her purse.

Pham's daughter, Victoria N., testified Pham was talking on her cellular telephone when they went to eat. When defense counsel asked Victoria what Pham said to Chu when she had finished the call, the prosecutor objected on hearsay grounds, and there was a sidebar. Defense counsel's offer of proof was Victoria would testify to the following: "[Pham] got off the phone and said that was the . . . [S]tore that called. You took the bag without paying for the stuff. I told you to stay there with the bag. Why did you take the bag?" The court's tentative ruling was that it was admissible as an excited utterance. The court took a recess to allow counsel to research the issue.

After the recess and out of the presence of the jury, the trial court indicated it wanted to hear Victoria's testimony before hearing argument and making its ruling. Victoria testified that after the telephone call, Pham said to Chu, "'[W]hy did you leave the bag. I told you to stay at the store with the bag.'" Victoria added that Pham asked Chu if she paid for the puppy clothes. The trial court asked counsel whether Pham's statements were excited utterances. Defense counsel argued because it was spontaneous, it was not self-serving. The prosecutor argued Pham's statements were self-serving because they attributed blame to Chu. After the court indicated it was going to allow the

9

testimony because it was an excited utterance, the prosecutor sought to admit Pham's prior convictions pursuant to Evidence Code section 1202 and *People v. Jacobs* (2000) 78 Cal.App.4th 1444 (*Jacobs*). After reading *Jacobs* and hearing argument, the court's tentative ruling was to allow the prosecutor to impeach Pham with her prior convictions if Victoria testified concerning what Pham said to Chu after the telephone call. The court continued the matter to give defense counsel additional time to research the issue.

At the continued hearing, the trial court stated it had thoroughly researched the issue and considered the prosecutor's written motion. The prosecutor argued that pursuant to *Jacobs*, the prosecutor may impeach a declarant with prior convictions, subject to an Evidence Code section 352 analysis. Defense counsel argued *Jacobs* could be distinguished because it did not involve an excited utterance. After the court discussed *Jacobs*, the court indicated Pham made a spontaneous and potentially exculpatory statement in Victoria's presence. The court opined Pham's statements amounted to a denial of the charges and she was not testifying. The court explained her prior convictions were for theft, the same type of offenses charged here. With respect to Evidence Code section 352, the court ruled Pham's statements were admissible as spontaneous statements pursuant to Evidence Code section 1240. The court reasoned that Pham's prior convictions would not consume undue time and were not misleading. The court explained the prior convictions were prejudicial but everything is prejudicial to a defendant. The court opined the relevance of the prior convictions was not substantially outweighed by undue prejudice because the prior convictions were highly relevant in that they were of the same type of offense as the charged offenses. The court ruled Victoria could testify as to what Pham said after she ended the call, but the prosecutor could impeach Pham with her prior convictions. Characterizing it as a "Hobbesian [*sic*] choice," defense counsel indicated he would not question Victoria about Pham's statements.

10

The jury convicted Pham of count 2 but acquitted her of count 1. The trial court sentenced Pham to two years in jail.

## DISCUSSION

### I. *Admission of CD*

Pham raises numerous contentions in arguing the trial court erred in admitting the CD and permitting witnesses to testify as to its contents. We will address each in turn.

### A. *Authentication*

Pham argues the CD was not properly authenticated. Not so.

At the Evidence Code section 402 hearing, Pham's defense counsel stated, "Under Evidence Code [section] 205, the prosecutor has authenticated it, but I am going to get beyond that." We assume defense counsel misspoke when he referred to Evidence Code section 205, which is the definition of real property, and meant to refer to Evidence Code section 250, which is the definition of a writing. Nevertheless, Pham conceded the prosecutor properly authenticated the CD. Thus, Pham has forfeited appellate review of the issue. (Evid. Code, § 353; *People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21.) In any event, there was sufficient evidence the CD was what the prosecutor claimed it was. (Evid. Code, § 1400.)

Jang and Lee testified the Store had a surveillance system. They were able to watch the footage on a computer monitor and record the footage onto a CD. Lee testified she had recorded footage onto a CD once before. Jang and Lee also testified they knew Pham as she had previously bought a puppy at the Store. And they both identified Pham in court and on the CD. Finally, Serna identified Pham in court and on the CD. What Pham was really disputing below was that the CD did not include the entire incident, namely the end of the encounter when someone, allegedly Chu, picked up the Nordstrom bag from the floor and walked out of the Store. The inconsistencies in Serna's testimony go to his credibility as a witness to recall the events on the CD and not

11

whether the CD was what the prosecutor claimed it was. Thus, there was sufficient evidence to authenticate the CD.

B. *Secondary Evidence Rule*

Pham contends the trial court erred in admitting the CD because it violated the secondary evidence rule. In her moving papers, Pham initially asserted "this truncated video is not the '[b]est [e]vidence' of what actually occurred[.]" But she went on to claim that pursuant to Evidence Code section 1520 et seq., witness testimony should not be admitted to prove the contents of the incomplete CD. When the trial court framed the issue as one involving the correctness of witness testimony to prove the contents of the original footage, and not the CD, Pham's defense counsel was silent. We note that on appeal the Attorney General falls into the trap and discusses whether admission of the CD rather than the admission of the testimony was proper. We will limit our discussion to the correctness of the actual basis upon which the trial court ruled.

A video recording is a "writing" for purposes of the secondary evidence rule. (*People v. Panah* (2005) 35 Cal.4th 395, 475.) Under the secondary evidence rule, Evidence Code section 1521, "(a) The content of a writing may be proved by otherwise admissible secondary evidence. The court shall exclude secondary evidence of the content of writing if the court determines either of the following: [¶] (1) A genuine dispute exists concerning material terms of the writing and justice requires the exclusion. [¶] (2) Admission of the secondary evidence would be unfair. [¶] (b) Nothing in this section makes admissible oral testimony to prove the content of a writing if the testimony is inadmissible under [Evidence Code] [s]ection 1523 . . . ."

Evidence Code section 1523, subdivision (a), states the general rule that, "(a) Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing." However, Evidence Code section 1523 also provides for several exceptions to the general rule: "(b) Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the proponent does not have possession or control of a

copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence. [¶] (c) Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the proponent does not have possession or control of the original or a copy of the writing and either of the following conditions is satisfied: [¶] (1) Neither the writing nor a copy of the writing was reasonably procurable by the proponent by use of the court's process or by other available means. [¶] (2) The writing is not closely related to the controlling issues and it would be inexpedient to require its production."

Here, the trial court properly concluded witnesses could testify as to what they observed on the original footage. It is clear the original footage was lost as the surveillance system stored it for only 30 days. And Pham offers no evidence Serna, Lee, or Jung fraudulently intended to copy onto the CD only a portion of the incident. There was evidence both Serna and Jung were not in the back office when Lee tried to record the original footage onto a CD. Additionally, Lee testified it was only her second time recording footage. Based on this evidence, it was certainly reasonable for the trial court to conclude Lee's failure to record the entire incident was an accident and not done with fraudulent intent. Thus, admission of witness testimony concerning the contents of the original footage did not violate the secondary evidence rule.

*C. Evidence Code section 352*

Pham claims the CD was not relevant because it was only a "snapshot" of the incident, it was misleading, and it was prejudicial. We disagree.

Evidence Code section 350 states: "No evidence is admissible except relevant evidence." Relevant evidence is "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Although "'there is no universal test of relevancy, the general rule in criminal cases [is] whether or not the evidence tends logically, naturally,

13

and by reasonable inference to establish any fact material for the prosecution[.]'"
(*People v. Freeman* (1994) 8 Cal.4th 450, 491.)

Evidence Code section 352, however, authorizes a trial court to exclude relevant evidence. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) For purposes of Evidence Code section 352, prejudice means "'evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues. [Citation.]'" (*People v. Heard* (2003) 31 Cal.4th 946, 976.) We review a trial court's rulings for an abuse of discretion.

Here, the trial court properly performed the balancing test required by Evidence Code section 352 and concluded the CD was admissible. The CD was certainly relevant to the proceedings. It was an accurate, albeit incomplete, recording of what transpired at the Store that day. And it was not misleading or confusing. It showed what transpired from the time Pham entered the Store to the time before she left. The jury would not be confused by the CD; it would simply have to determine based on other evidence whether Pham or Chu left the Store with the Nordstrom bag. Finally, admission of the CD was not unduly prejudicial. Although the CD was damaging, it would not evoke an emotional bias against Pham, and it had substantial probative value. Thus, Evidence Code section 352 did not require exclusion of the evidence.

*D. Due Process*

Pham argues admission of the CD violated her due process rights and right to a fair trial. Not so.

"'Ordinarily, even erroneous admission of evidence does not offend due process unless it is so prejudicial as to render the proceeding fundamentally unfair.' . . . [¶] 'To prove a deprivation of federal due process rights, [a defendant] must satisfy a

14

high constitutional standard to show that the erroneous admission of evidence resulted in an unfair trial.' [Citation.] '"The dispositive issue is . . . whether the trial court committed an error which rendered the trial 'so "arbitrary and fundamentally unfair" that it violated federal due process.' [Citations.]" [Citation.]' [Citation.]" (*People v. Covarrubias* (2011) 202 Cal.App.4th 1, 20.)

As we explain above, the trial court properly concluded the CD was relevant and that its admission was not misleading or unduly prejudicial. Thus, its admission did not violate Pham's constitutional rights.

## II. Admission of Prior Convictions

Pham contends the trial court erred in ruling the prosecutor could impeach Pham with her prior convictions if Pham introduced an exculpatory hearsay statement. We disagree.

In *Jacobs, supra*, 78 Cal.App.4th at page 1446, footnote omitted, the court held "that a defendant's prior felony convictions are admissible under . . . [Evidence Code] sections 1202 and 788 to attack his credibility when, at his own request, his exculpatory statement to the police is admitted into evidence, but he does not testify at trial." The court reasoned that because the defendant had offered his out-of-court statement into evidence, Evidence Code section 1202 entitled the prosecution to impeach defendant as though defendant had testified to it on the stand. (*Jacobs, supra*, 78 Cal.App.4th at pp. 1449-1450.) The court stated that because defendant's prior convictions were felonies, Evidence Code section 788 made them specifically admissible to impeach his credibility. (*Jacobs, supra*, 78 Cal.App.4th at p. 1449.)

In *People v. Little* (2012) 206 Cal.App.4th 1364 (*Little*), another panel of this court approved of the *Jacobs* court's reasoning. The *Little* court stated: "We see no reason to depart from the reasoning of . . . *Jacobs, supra*, 78 Cal.App.4th 1444. As the appellate court in *Jacobs* observed, if [defendant] had chosen to testify, Evidence Code section 788 would have permitted the prosecution to challenge his credibility with prior

conviction evidence. [Citation.] Should he have been allowed to avoid a challenge to his credibility, and undercut the operation of [Evidence Code] section 788, by the simple device of putting on exculpatory hearsay evidence without taking the witness stand? [¶] Evidence Code section 1202, upon which the *Jacobs* court also relied, closes the door on any such chicanery." (*Little, supra,* 206 Cal.App.4th at p. 1375, fn. omitted.)

We conclude the reasoning in *Jacobs* and *Little* is sound. If Pham had testified, the prosecutor could have challenged her credibility with her prior convictions pursuant to Evidence Code section 788. Pham sought to admit an exculpatory statement via an excited utterance. Evidence Code section 1202 permitted the prosecutor to challenge Pham's credibility with her prior convictions like the prosecutor would have been able to do if she testified.

Pham raises a few additional points. First, she claims the concerns present in *Jacobs* are not present here as there is "no gamesmanship" involved. We disagree. Before trial, Pham admitted her prior convictions and without testifying, tried to get before the jury an exculpatory statement. This is a textbook example of gamesmanship.

Second, Pham, without citing to any authority or any reasoned argument, argues *Jacobs* should not apply when a defendant seeks to admit a spontaneous exculpatory statement. We discern no reason for drawing a distinction between a spontaneous exculpatory statement and other out-of-court statements, i.e., defendant's out-of-court statement to an officer in *Jacobs*, and an exculpatory alibi declaration in *Little*.

Finally, Pham claims the trial court erred in its Evidence Code section 352 analysis. Contrary to Pham's claim otherwise, her convictions were not of "slight probative value." They were of great probative value as to her credibility. The issue is whether they were unduly prejudicial, which they were not. Courts routinely admit prior conviction to impeach a testifying defendant. Although they were ultimately not admitted into evidence, the court likely would have limited the evidence to the fact she

16

suffered prior theft convictions and likely limited the number of convictions Pham suffered. Thus, the trial court properly ruled that if Pham introduced an exculpatory hearsay statement the prosecutor could impeach Pham with her prior convictions.

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.