Filed 5/21/14  P. v. Ward CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHELTON J. WARD,<br><br>        Defendant and Appellant. | A135970<br><br>(Contra Costa County<br>Super. Ct. No. 51112879) |

**INTRODUCTION**

A jury convicted defendant Shelton Ward of residential burglary.  The prosecution theory was that defendant helped Darrian Shafer break into a house through a downstairs window facing the backyard while the homeowner was upstairs, looking down on the intruders.  Defendant did not testify at trial, but Shafer's testimony suggested defendant did not share his burglarious intent, or help him commit the burglary.  Instead, defendant tried to dissuade him. On appeal defendant contends the court erroneously excluded Shafer's testimony regarding statements defendant made to him expressing his misgivings about the burglary and erroneously admitted a prior felony juvenile adjudication to impeach defendant's nonverbal assertive conduct of tugging at Shafer's shirt.  He also asserts the trial court misunderstood the scope of its discretion in using the statutory formula to assess the mandatory restitution fine.  We affirm.

## STATEMENT OF THE CASE

Defendant was charged by information with a residential burglary in which a nonparticipant was present, a violent felony. (Pen. Code, §§ 459, 460, subd. (a), 667.5, subd. (c)(21).)[1] The information also alleged defendant had a prior juvenile adjudication for robbery, a serious felony. (§ 1170.12, subd. (b)(3).) A jury convicted defendant as charged. The court found true the prior adjudication allegation, but struck it pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and sentenced defendant to the aggravated term of six years in state prison.

## STATEMENT OF FACTS

### A. *Prosecution Case*

On June 16, 2011, the homeowner of a two-story house in El Cerrito was washing her breakfast dishes in her kitchen downstairs when she heard light but persistent knocking at her front door. She went upstairs to peek through a bedroom window that faces the street, but she did not see or hear anyone. She went to her home office, which is also upstairs, where she noticed that her computer router, the control panel of her house alarm system, and the land line for her cordless phone were all dead. She spotted two strangers in her backyard from another window. She went back to her office, locked the door, and called 911 on her cell phone. She stayed on the phone with the dispatcher while she periodically peeked out the window in her office.

Through that window she saw two African-American men almost directly below her, about six feet away. One was short-haired, over five feet five inches tall, and wore a black T-shirt. He stood away from the house, observing and talking to the other man. The other man had dreadlocks, was about six feet tall, and wore a black hoodie and a black beanie. He was out of her sight most of the time. Although she could not see the kitchen window from her vantage point, she saw one of the intruders throw the screen

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

belonging to one of the kitchen windows over the fence. She heard the alarm go off, and waited in the office until the police arrived and opened the door a few minutes later.

The downstairs windows facing the backyard were protected by a security system. They were equipped with contact magnets that would sound the alarm if the magnets were separated by opening the window. The night before the burglary, the homeowner had armed her security system. She did not recall turning off the alarm the next morning. All the of the windows were still closed and locked with their screens intact the next morning.

When the homeowner checked the windows after the burglary, the glass in one of the windows was broken and a screen was missing. That window was open about 40 centimeters, or just shy of one and one-half feet. To open the window, one presses the latch, then slides the window horizontally. Part of the plastic window frame was chipped, as if something had been used to pry the screen off the frame to gain access to the sliding part of window. The window screen, which was found on the other side of the fence, was bent in the middle. The two contact magnets on the window for the security system were separated. A large concrete rock was found on the ground about five feet from the window. Also, the cover to the electrical panel on the house was unlatched, the panel door was ajar , and the main breaker switch to the house had been turned off.

Two persons matching the homeowner's description were separately detained by the police a few blocks from the burgled house. The homeowner was brought to the suspects' locations in a police car. From the police car, the homeowner recognized one of the suspects, later identified as then 17-year-old Darrian Shafer, by his dreadlocks, build, and clothing – but not his face – as one of the persons she had seen in her backyard. She was then driven a short distance and identified 18-year-old defendant by his hair, clothing, face, and build as the other person she saw in her backyard.

The police found fingerprints on the inner part of the sliding window, on the latch, and on both sides of the window screen. Two fingerprint experts independently

determined that the print found on the edge of the broken window matched defendant's left little finger. Shafer's palm print was on the screen.

## B. *Defense Case*

Prior to defendant's trial, Shafer had been placed at Byron Boys Ranch by the juvenile court for his participation in the burglary. He testified under immunity. On June 16, Shafer called defendant to meet him near an apartment complex in El Cerrito. When defendant arrived, Shafer told defendant he wanted to "[g]o rob a house" and chose the homeowner's house at random. Shafer had to pressure defendant to join him, because defendant did not want to help rob the house.

Shafer knocked on the front door and rang the doorbell while defendant stood behind him and watched. When no one answered, Shafer found the house's electrical panel and switched off power to the house in order to disable the security alarm, while defendant stayed by the front of the house. Shafer crawled under the fence and defendant followed. Defendant remained behind Shafer while they were in the backyard. Shafer removed the screen from a window, threw it over the back fence, and broke the window with a big rock. He was proceeding to climb through the broken window into the house when Shafer felt something catch his sweatshirt. It was defendant, who grabbed Shafer's sweatshirt and "had a grip on [him]." Defendant was trying to pull Shafer away from the window. He had one hand on Shafer's sweatshirt and the other hand holding onto the window. Shafer tried to shake off defendant's grip but could not do so. He did not hear an alarm go off. Shafer had a change of heart and decided to leave. The two of them then crawled back under the fence to the street, walking towards the apartment complex. Shafer could tell defendant was angry with him.

Defendant ran in a panic upon seeing a police car pass by, but Shafer kept on walking. Shafer initially told the police he did not know what they were talking about but eventually admitted he attempted to burglarize the house. He maintained he acted alone and only met up with defendant afterwards.

When Shafer was first contacted by a defense investigator he again maintained he acted alone, even after the investigator told Shafer there was a possibility defendant's fingerprints were found at the scene , because he "just did not think there could be fingerprints on a window," and he mistrusted the investigator. About a week later, during a second interview, Shafer told the investigator defendant was with him in the backyard.

The court took judicial notice of the fact that "defendant was convicted of a felony crime of moral turpitude in Contra Costa County Superior Court on March 9, 2011" and instructed the jury it could "consider this evidence only on the issue of credibility with respect to any nonverbal statement made by the defendant. You may not consider this evidence for any other purpose."

## DISCUSSION

### 1. *Exclusion of Defendant's Statements to Shafer was Proper.*

Defendant argues the trial court erred in excluding statements defendant made to Shafer before, during, and after the burglary indicating his lack of intent to commit a burglary.[2] The statements on which defendant bases his argument are the following: (1) When told by Shafer he intended to burglarize the victim's home, *defendant said he did not think that was a good idea*; (2) when Shafer was trying to enter the house through the window, *defendant* tugged at Shafer's jacket and *told him not to enter the house*; and (3) after Shafer and defendant left the backyard, *defendant told Shafer he was stupid for trying to rob the house*. The prosecutor objected on hearsay grounds; defendant argued the statements were not hearsay because they were not admitted for their truth, "but to explain the effect on the listener and Mr. Shafer's conduct." The trial court sustained the hearsay objection, but permitted Shafer to testify that he felt defendant tugging at his jacket as he attempted to enter the residence.

---

[2] Defendant's offer of proof regarding Shafer's proposed testimony, the prosecutor's response, and the court's ruling occurred off the record and are memorialized in a settled statement on appeal prepared after the fact in the trial court.

5

On appeal, defendant asserts his own statements were admissible either as nonhearsay circumstantial evidence of his lack of criminal intent, or as hearsay statements about his lack of intent, admissible under the state-of-mind exception to the hearsay rule under Evidence Code section 1250. However, so far as the settled statement shows, neither of these grounds were argued to the trial court. Instead, the defense argued the statements were admissible to prove their effect on *Shafer's* conduct, an argument not made here. Arguably, defendant's failure to specify his theories of admissibility below forfeits his claim on appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 435; *People v. Abel* (2012) 53 Cal.4th 891, 924; *People v. Pearson* (2013) 56 Cal.4th 393, 470, fn. 10, citing Evid. Code, § 354.) In any event, the claim is not meritorious.

A trial court's evidentiary rulings, including those which admit or exclude evidence based on distinctions between nonhearsay and the state of mind exception to the hearsay rule, are reviewed for abuse of discretion " ' "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Geier* (2007) 41 Cal.4th 555, 585; *People v. Rowland* (1992) 4 Cal.4th 238, 264.)

The distinction between a declarant's nonhearsay statement of intent and a declarant's hearsay statement of his then existing state of mind is often difficult to draw. "The threshold determination is whether the proffered statement is hearsay." (*People v. Ortiz* (1995) 38 Cal.App.4th 377, 389.) Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing [i.e., by the declarant] and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) On the other hand, a declarant's statement "which does not directly declare a mental state, but is merely circumstantial evidence of that state of mind, is not hearsay. It is not received for the truth of the matter stated, but rather *whether the statement is true or not, the fact such statement was made* is relevant to a determination of the declarant's state of

6

mind. [Citation.] . . . [S]uch evidence must be relevant to be admissible—the declarant's state of mind must be in issue. ([Evid. Code,] § 210.) A limiting instruction is required with declarations used as circumstantial evidence of the declarant's mental state; that is, the declaration is not received for the truth of the matter stated and can only be used for the limited purpose for which it is offered. ([Evid. Code,] § 355.)" (*People v. Ortiz, supra*, 38 Cal.App.4th at p. 389, italics added.)

Although the declarant's (i.e., defendant's) state of mind (i.e., his intent) was at issue, the three statements defendant made to Shafer do not qualify as nonhearsay circumstantial evidence tending to prove by inference his lack of intent to burglarize the victim's home. It is true that the statements were not offered to prove (1) it was a bad idea to burglarize the victim's home, (2) Shafer should not enter the house, or (3) Shafer was stupid. But if not true, those facts did not give rise to any inference about defendant's intent. The possible inference defendant lacked burglarious intent springs not from the fact he made such statements, regardless of the truth of their content; the inference, such as it is, arises *only* if it is true defendant *believed* it was a bad idea to burglarize the victim's home -- he actually *thought* Shafer should not enter the house, and really *did believe* Shafer was stupid for trying to burglarize the house. However, if those statements were *not* offered to prove the state of defendant's true feelings, then they were not relevant to defendant's intent and were inadmissible as nonhearsay evidence lacking relevance to any disputed issue in the case. (Evid. Code, § 210.)

Assuming the statements, if true, are relevant to defendant's intent, they are hearsay. Evidence Code section 1250 makes admissible, for its truth, hearsay "evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) . . . when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time *when it is itself an issue in the action*; or [¶] (2) The evidence is offered to prove or explain acts or conduct

of the declarant." (Evid. Code, § 1250, subd. (a), italics added.) However, "[t]his section does not make admissible evidence of a statement of . . . belief to prove the fact . . . believed." (Evid. Code, § 1250, subd. (b).)

A statement that otherwise meets the requirements of section 1250 is nevertheless inadmissible "if the statement was made under circumstances such as to indicate its lack of trustworthiness." (Evid. Code, § 1252.) The trial court also retains broad discretion to exclude otherwise admissible hearsay evidence if "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Ortiz, supra*, 38 Cal.App.4th 377, 394.)

In our view, the trial court properly could have excluded evidence of these hearsay statements because they were "made under circumstances such as to indicate [their] lack of trustworthiness." (Evid. Code, § 1252.) While defendant's words indicate his discomfort with what was taking place, his actions – waiting for Shafer as he knocked on the door, following Shafer under the fence into the backyard, standing guard in the backyard while Shafer broke the window, and ultimately grabbing the window himself – suggest his comments may have been a way of hedging his bets: expressing misgivings about the whole criminal enterprise in case it went awry, but contributing to its success in the hope of getting away with some valuables. Under these circumstances, we cannot say the trial court abused its discretion in concluding defendant's statements were an unreliable indicator of his true state of mind during the burglary.

## 2. *Impeachment of Defendant's Assertive Conduct with Evidence of Defendant's Prior Felony was Proper.*

Although the trial court excluded defendant's verbal statements to Shafer on hearsay grounds, it permitted Shafer to testify about defendant's nonverbal act of pulling Shafer away from the window by his sweatshirt. Over defense objection, the trial court later permitted the prosecutor to introduce evidence of defendant's prior felony, on the

8

theory that the act of pulling on Shafer's sweatshirt was assertive conduct equivalent to a hearsay statement offered to prove that defendant did not intend to participate in or withdrew from the burglary, and this nonverbal statement could be impeached just as a verbal hearsay statement could be impeached.[3]

Defendant argues that his act of pulling on Shafer's sweatshirt was not assertive conduct intended to be a substitute for a verbal or written statement. As such, it was admitted as nonhearsay evidence, and was not a "statement" by a declarant subject to impeachment. While defendant's argument has surface appeal, for the following reasons, it does not carry the day.

Evidence Code section 1202 permits the impeachment of a declarant's hearsay statement by means of a prior felony conviction to attack the credibility of that hearsay declarant when his exculpatory statements are admitted but he does not testify at trial. (*People v. Jacobs* (2000) 78 Cal.App.4th 1444, 1452-1453; *People v. Little* (2012) 206 Cal.App.4th 1364, 1373-1374.) Evidence Code section 225 defines a statement as an "oral or written verbal expression" or "nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression." (Evid. Code, § 225, subd. (a).) As explained in the comment to Evidence Code section 1200 (defining hearsay), "evidence of a person's conduct out of court is not inadmissible under the hearsay rule expressed in Section 1200 unless that conduct is clearly assertive in character. Nonassertive conduct is not hearsay." (Evid. Code, § 1200, com.) Put differently, "[f]or purposes of the hearsay rule, conduct is assertive if the actor at the time intended the conduct to convey a particular meaning to another person. [Citation.] For example, a nod of the head in response to a question calling for a yes-or-no answer, or a gesture pointing to a particular

---

[3] The trial court referred to the conviction as a "felony crime of moral turpitude" and instructed the jury it could consider the evidence "only on the issue of credibility with respect to any nonverbal statement made by the defendant. "

9

person when asked to identify a perpetrator, are examples of assertive conduct." (*People v. Jurado* (2006) 38 Cal.4th 72, 129.)

In *Jurado*, the defense unsuccessfully sought to admit at trial a videotape that was made, without defendant's knowledge, while he was being interrogated by police detectives about a murder. (*Id.* at p. 128.) The videotape showed defendant's emotional displays and statements he made, including an expression of remorse. (*Id.* at pp. 128-129.) The Supreme Court ruled that evidence of defendant's emotional responses should not have been excluded as hearsay because they were not assertive conduct: "[N]othing in the videotape suggests [they] were voluntary or that he intended them to convey any particular meaning to the interrogating officers." (*Ibid.*) The court also ruled defendant's "statements, including assertions and descriptions of his own feelings and other mental states, were hearsay," and they were not admissible under the state-of-mind exception to the hearsay rule because they were "self-serving postcrime statements" made under circumstances indicating a lack of trustworthiness. (*Id.* at p. 130.)

*People v. Snow* (1987) 44 Cal.3d 216 is also instructive here. In *Snow*, a prosecutor was permitted to testify, over a defense hearsay objection, that when the prosecutor informed defense counsel about a murdered victim's death, defendant stood by impassively whereas defense counsel appeared shocked. (*Id.* at p. 227.) The trial court impliedly found defendant's conduct was hearsay, but admitted the evidence of defendant's non-response as an adoptive admission he killed the victim. (*Ibid.*) The Supreme Court concluded the evidence of defendant's passive conduct was not admissible as an adoptive admission, because no accusation had been leveled against him for him to adopt. (*Ibid.*) Nevertheless, the court found the evidence was properly admitted on the basis that "[d]efendant's passive response to the prosecutor's statement was probative of defendant's prior knowledge of the Koll killing. Certainly, some sort of affirmative response could have been expected under these circumstances. Such nonassertive responses or reactions do not fall within the proscriptions of the hearsay

10

rule. (See Evid. Code, §§ 1200 [hearsay rule applies to 'statements'], 225 ['statement' does not include nonverbal conduct unintended as substitute for verbal expression] . . . .)" (*People v. Snow, supra*, 44 Cal.3d 216, 227-228.)

We draw the following lessons from *Jurado*, *Snow*, *Jacobs*, *Little*, and Evidence Code sections 225 and 1202: If a declarant's conduct is nonassertive – that is, not intended as a communicative substitute for a verbal statement – it may be admissible in a given case over a hearsay objection, assuming it is relevant to a disputed issue at trial. But if it is admitted as nonassertive, nonhearsay evidence, the declarant cannot be impeached with his prior conviction because he has made no impeachable statement by his nonassertive conduct. On the other hand, if the declarant's conduct is assertive – that is, his conduct is intended to communicate some message and is a substitute for a verbal statement to the same effect – it is a hearsay "statement" and it is inadmissible unless it falls within the parameters of a recognized hearsay exception. If it *does* qualify for admission under a recognized hearsay exception, the hearsay declarant of the statement is subject to impeachment by felony conviction.

Applying these lessons to the case under review, we hold the trial court was entitled to conclude that defendant, by his conduct, was in effect telling Shafer to stop the burglary. The settled statement shows defense counsel's offer of proof with respect to Shafer's proposed testimony included the following: "Mr. Shafer felt something tugging at his jacket and turned around to look; [] Mr. Shafer saw Mr. Ward pulling on his jacket and Mr. Ward *told him not to go in*; [] Mr. Shafer and Mr. Ward then left the backyard." (Italics added.) On this record, the trial court could and evidently did decide defendant's conduct was assertive because it was intended to communicate to Shafer he should stop the burglary; defendant's conduct qualified as a substitute nonverbal statement of defendant's then-existing state of mind; it was made under sufficiently trustworthy circumstances, and defendant's tugging on Shafer's shirt was relevant to defendant's intent, a disputed issue in the trial. Consequently, as the nonverbal statement of a hearsay

11

declarant, it was subject to impeachment with defendant's felony conviction under Evidence Code sections 1202 and 788. No abuse of discretion appears.

### 3. *The Trial Court Did Not Misunderstand or Abuse its Discretion in Setting the Restitution Fine Pursuant to Section 1202.4.*

Pursuant to section 1202.4,[4] the trial court imposed a restitution fine of $1,440. It arrived at that figure by using the formula provided in the statute; that is, the court multiplied the statutory minimum fine ($240) by the number of years (six years) of defendant's incarceration. Defendant asserts the trial court misunderstood the scope of its discretion in that it "believed that the fines could not be waived and that it was required to set the amount given the formula in Penal Code Section1202.4, subd. (b)(2)." He further asserts "when appellant asked the court for a reduction in fines, the court failed to exercise its discretion in doing so *and stated that it believed it was statutorily mandated to order the restitution fines according to the calculation it used to determine the fine.*" (Italics added.)

The record does not support defendant's assertions, or otherwise affirmatively show that the trial court misunderstood the proper scope of its discretion. The record

---

[4] Penal Code section 1202.4 provides in relevant part: "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000). . . . [¶] (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted. [¶] (c) The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b) . . . ."

shows that before imposing the restitution fine according to the statutory formula, the court had already determined that the aggravated term applied, and the court confirmed with its clerk that the statutory minimum had been raised to $240. After imposing the restitution fine, the parole revocation fine, and various other fines and fees, defense counsel said: "Your Honor, I'd ask the Court to consider at least waiving some of the fees and fines. One, the Court has now just sentenced Mr. Ward to state prison. He has no form of income . . . [and] he will not be getting out of prison any time within the next year or two. So I would ask the Court, at least on some of the ones that the Court is able, to waive those . . . fines." The court waived attorney fees and the probation report fee, but noted that restitution and other fees were mandatory. The court added: "I don't think there's anything else I have the discretion to waive. If there is, tell me and I'll consider waiving it. But I don't think there is. Restitution fine." Defense counsel responded, "Yeah, no. I think the restitution fine is mandated and, obviously, the actual restitution," to which the court replied: "Right."

Nothing in the court's comments indicate it believed it was *required* to employ the statutory formula for fixing an appropriate restitution fine. On the contrary, the record on the whole supports the inference the court was well acquainted with the statute, knew the restitution fine was mandatory absent extraordinary and compelling circumstances, and knew the minimum fine had increased. The statute unambiguously provides that use of the statutory formula is discretionary; inability to pay does not constitute an extraordinary or compelling reason to waive the restitution fine; and the restitution fine should reflect the seriousness of the offense. No misunderstanding or abuse of discretion appears.

# DISPOSITION

The judgment is affirmed.

_____
Dondero, Acting P.J.

We concur:


_____
Banke, J.


_____
Becton, J.[*]

_____

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14