Filed 10/21/19

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C085347 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE022616) |
| v. | |
| MIKEEL MARCELL CARKHUM-MURPHY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Russell L. Hom, Judge.  Affirmed as modified.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Dina Petrushenko, Deputy Attorney General, for Plaintiff and Respondent.

_____

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, III, IV, and V of the Discussion.

1

Defendant Mikeel Marcell Carkhum-Murphy was convicted of second degree robbery after a jury trial. The trial court sustained prior strike and serious felony allegations and sentenced him to a nine-year state prison term.

On appeal, defendant contends admitting evidence of prior gun ownership was prejudicial error, the use of prior convictions to impeach him was improper and the product of ineffective assistance of counsel, a juror was erroneously discharged for cause, and cumulative error warrants reversal. He further contends the case should be remanded to allow the trial court to exercise its discretion whether to strike the five-year serious felony enhancement. Agreeing with only the last contention, we shall remand for the court to exercise its discretion regarding the enhancement and otherwise affirm.

BACKGROUND

On October 23, 2016, S. K. was working as the cashier at Chimas Liquor Store on Franklin Boulevard in Sacramento. Defendant entered the store at around 6:00 p.m. He walked around the store a few times and then asked to buy a certain type of cigarettes along with blunt wraps.

After S. K. placed the items on the counter, defendant put a $100 bill there; S. K. told defendant she might not have change for the bill. While S. K. checked the cash register for change, defendant asked if she could break a second $100 bill. When S. K. placed the $88 in change on the counter, defendant took the change and the $100 bill and started walking out of the store, leaving the cigarettes and blunt wraps behind.

S. K. followed defendant out of the store and toward his car. She called out to him, "Hey you forgot your cigarettes. You need to give me the $100 bill. You have that still." Defendant picked up his pace and rushed to his car while loudly and aggressively cursing at her. As defendant got into the driver's seat, he lifted up his shirt, whereupon S. K. saw what she thought was a black gun. After defendant got into the car, he pointed the gun through an open window toward S. K.'s general area. He then drove the car, a

2

gold Buick, very fast out of the store's parking lot, almost hitting her.  S. K. called 911 almost immediately.

Octavion Joseph owned the Buick defendant drove on the day of the robbery.  He shared the car with his sister, Eneshia Johnson, and her boyfriend, defendant.  A police officer contacted Octavion, whose phone had an Instagram account associated with defendant.  One of the photographs on defendant's account showed him holding what appeared to be a black semiautomatic handgun.[1]  The photograph was posted on defendant's Instagram account on February 7, 2016.

Defendant was interviewed by a police officer on December 6, 2016.  He admitted going to the store to buy blunt wraps and cigarettes.  Asked about the robbery, he replied, "Yes, I took the money, yes, she gave me the change.  I did that.  I'm guilty of that.  But having a gun or pointing any gun or saying anything to her after that I'm not guilty of." Defendant said he has not had a gun since he was 15 years old.  When shown the Instagram photograph of him holding a gun, defendant admitted it was him in the photograph and said he forgot about that photo.  Defendant told the officer the gun was not his.  According to the interrogating officer, defendant's demeanor changed after seeing the photograph, as he became less talkative and was hesitant to answer questions.

Johnson testified that she and defendant were using Octavion's car to go out of town on the day of the incident.  She and defendant stopped at the liquor store to get a few things and change for a $100 bill.  She needed the change to pay her cell phone bill because her carrier would not accept $100 bills.

Johnson did not want to go in the store so she sent defendant in when they arrived. He returned to the car a minute or two after entering the store.  When defendant returned,

---

[1]      S. K. drew a picture of the gun defendant used to threaten her, which an officer said was of a semiautomatic handgun.

3

there was nothing in his hands and a woman was outside the car, yelling. Johnson could hear the woman say she had the license plate number and was calling the police.

Johnson asked defendant was happened. At first he did not say anything. After they drove away, defendant said he took the $100 bill and the change. He did not have a gun or any other type of weapon. She had never seen defendant with a gun.

DISCUSSION

I

*Admission Of The Gun Photograph*

Defendant contends admitting the Instagram photograph of him holding a handgun violated his right to due process. He asserts it was improper propensity evidence that prejudiced him. We disagree.

Generally, "[w]hen the prosecution relies on evidence regarding a specific type of weapon, it is error to admit evidence that other weapons were found in the defendant's possession, for such evidence tends to show not that he committed the crime, but only that he is the sort of person who carries deadly weapons." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1056 [trial court erred in admitting evidence of defendant's prior possession of handgun similar to murder weapon where prosecutor did not claim such weapon was actually used in murders]; see also *People v. Riser* (1956) 47 Cal.2d 566, 576-577 [trial court erred in admitting evidence of a Colt .38-caliber revolver found in defendant's possession two weeks after murders where evidence showed weapon actually used was a Smith & Wesson .38-caliber revolver], overruled on other grounds in *People v. Morse* (1964) 60 Cal.2d 631; *People v. Archer* (2000) 82 Cal.App.4th 1380, 1392-1393 [trial court erred in admitting evidence of knives recovered from defendant's residence where knives were not murder weapon and were irrelevant to show planning or availability of weapons].) In other words, " '[e]vidence of possession of a weapon not used in the crime charged against a defendant leads logically only to an inference that defendant is the kind of person who surrounds himself with deadly weapons -- a fact of

4

*no relevant* consequence to determination of the guilt or innocence of the defendant.' " (*Archer*, at pp. 1392-1393.)

However, evidence of weapons not actually used in the commission of a crime may be admissible when they are relevant for other purposes. (*People v. Cox* (2003) 30 Cal.4th 916, 956 [when weapons are otherwise relevant to the crime's commission, but are not the actual murder weapon, they may still be admissible], disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The critical inquiry is whether the weapons evidence bears some relevance to the weapons shown to have been involved in the charged crimes or is being admitted simply as character evidence. (*People v. Barnwell*, *supra*, 41 Cal.4th at pp. 1056-1057; *People v. Prince* (2007) 40 Cal.4th 1179, 1248-1249.)

The problem with defendant's argument is that the photograph was not propensity evidence but was admitted for two other purposes, to impeach his statement to the police that he never owned a gun, and to show that he had possessed a firearm before the incident that could have been the one described by his victim.[2] The particular gun defendant employed to threaten S. K. was never found, but she identified it as a black gun and drew a picture of it that resembled a semiautomatic handgun. By showing defendant holding a black semiautomatic handgun several months before the incident, the photograph is consistent with defendant owning a firearm like the one S. K. described, and thus supports her testimony that defendant robbed her by threatening her with a firearm. Additionally, it impeaches defendant's statement to the police that he had not possessed a gun since he was 15 years old and provides context to the officer's testimony regarding defendant's reaction to being shown the photograph. Defendant's claim that

---

[2]     The photograph was posted to the Instagram account on February 7, 2016, eight months before the robbery.

the evidence had no or almost no relevance is thus without merit.  The trial court did not err in admitting the evidence over his objection.

Since the evidence was properly admitted, defendant's due process claim fails as well.  (See *People v. Harris* (2005) 37 Cal.4th 310, 336 ["the application of ordinary rules of evidence does not implicate the federal Constitution"].)

## II

### *Prior Conviction Evidence*

The prosecution moved in limine to admit evidence of defendant's prior conviction for robbery to prove intent and common plan or scheme pursuant to Evidence Code section 1101, subdivision (b), and to admit a prior conviction for providing false information to a peace officer to impeach defendant if he testified.  The trial court denied the motion regarding the propensity evidence but ruled that both convictions would be admissible to impeach defendant if he testified.

The following exchange took place during defense counsel's direct examination of Johnson:

"Q:  And what happened when you stopped at the liquor store?

"A:  We stopped at the store.  I didn't want to go inside.  I sent my boyfriend inside.

"Q:  And how long was he gone?

"A:  For about a minute or two.

"Q:  What happened when he returned?

"A:  He came to the car; he got in the car.  Uhm, I realized there was nothing in his hands.  I seen a woman come outside yelling.  [¶]  I asked my boyfriend:  What's going on.  Like, what happened.  [¶]  And he was just like -- at first was like nothin.'  [¶]  I could hear the girl in the back.  She's saying:  Come back.  I got you license plate number.  I'm calling the police.  [¶]  I asked him again like:  What's going on?  Like what

6

happened in the store? [¶] And when we drove off, probably [a] couple minutes later, he let me know what occurred in the store.

"Q: And what did he tell you?

"A: He told the me that he took the $100 bill and the change."

After the defense rested, the prosecution moved to impeach defendant with the two prior convictions. The prosecutor argued that, by eliciting defendant's statement to Johnson, the defense bolstered the credibility of defendant's statement to the interrogating officer that he stole from but did not rob S. K. According to the prosecutor, since the defense was bolstering the credibility of defendant's statement to the officer, impeachment was allowed under Evidence Code section 788 and *People v. Little* (2012) 206 Cal.App.4th 1364. Defense counsel objected, arguing the prosecution was not prejudiced by Johnson's testimony since the prosecution already introduced a similar statement through defendant's police interview and the evidence should be excluded under Evidence Code section 352.

The trial court admitted the prior convictions to impeach defendant. It found defendant's statement to Johnson was relevant to his defense "because there is no acknowledgment of the presence of the gun. And that statement is consistent, right, with -- there is nothing inconsistent about the first statement as it relates to the statement he gave a month and a half later."

The trial court also ruled the prior convictions would be sanitized. As a result, the defense and prosecution reached a stipulation, which was read to the jury as follows: "Mikeel Murphy was convicted of a felony theft offense in 2005. [¶] And Mr. Murphy gave false information to a police officer in 2011." The jury was later instructed that it could consider a prior conviction only to evaluate a witness's credibility.

Defendant contends the prior convictions should not have been admitted because his statement to Johnson was inculpatory rather than exculpatory and allowing inculpatory statements to be impeached would give prosecutors unfettered power to

7

introduce character evidence against defendants who do not testify. He further contends trial counsel was ineffective in eliciting the testimony from Johnson that allowed the impeaching convictions to be introduced. He finds it was an abuse of discretion to admit the convictions over his Evidence Code section 352 objection, and admitting the priors prejudiced him.

Evidence Code section 1202 provides, in relevant part: "Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing."

"Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f)(4).) "In *People v. Castro* (1985) 38 Cal.3d 301 . . . , we held that 'prior felony convictions' within the meaning of article I, section 28, subdivision (f) are such as necessarily involve moral turpitude, i.e., a readiness to do evil. [Citation.] [¶] In *Castro*, we also held that trial courts retain their discretion under Evidence Code section 352 to bar impeachment with such convictions when their probative value is substantially outweighed by their prejudicial effect. [Citation.] We made plain that in exercising their discretion, trial courts should continue to be guided -- but not bound -- by the factors set forth in *People v. Beagle* (1972) 6 Cal.3d 441 . . . , and its progeny." (*People v. Clair* (1992) 2 Cal.4th 629, 654.) In exercising its discretion under Evidence Code section 352, the court must consider whether the prior conviction reflects adversely on the witness's honesty or veracity, its nearness or remoteness in time, its similarity to the present offense, and the potential effect on the defendant's failure to testify. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.) The trial court has broad discretion in determining whether to admit or exclude evidence under Evidence Code section 352 and its ruling will not be overturned absent an abuse of discretion. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1170.)

Impeaching a defendant's hearsay statements was addressed in *Little* and *People v. Jacobs* (2000) 78 Cal.App.4th 1444. In *Jacobs*, a prosecution for receiving stolen property, the defendant sought to introduce his own statement to the investigating officer that he had purchased the property in question from an acquaintance. (*Id.* at pp. 1447-1448.) The defendant did not testify at trial. (*Id.* at p. 1446.) The trial court allowed the prosecution to impeach the defendant's hearsay statement with evidence of the defendant's prior convictions. (*Id.* at pp. 1448-1449.)

The Court of Appeal agreed, holding Evidence Code sections 788 and 1202, taken together, provide that evidence of a prior felony conviction is admissible to impeach a criminal defendant's hearsay declaration. (*People v. Jacobs*, *supra*, 78 Cal.App.4th at pp. 1449-1450.)

*Little* found *Jacobs* well-reasoned and followed it. (*People v. Little*, *supra*, 206 Cal.App.4th at p. 1367.) As in *Jacobs,* the defense presented exculpatory hearsay statements by the defendant, which the prosecution impeached with the defendant's prior felony conviction. (*Little*, at pp. 1373-1374.) The Court of Appeal noted that, as in *Jacobs*, had the defendant chosen to testify, the prosecution would have been allowed to impeach him with the prior conviction. (*Little*, at p. 1375.) It asked: "Should he have been allowed to avoid a challenge to his credibility, and undercut the operation of section 788, by the simple device of putting on exculpatory hearsay evidence without taking the witness stand?" (*Ibid*.) The *Little* court answered, "no": "In short, Little attempted to outmaneuver the prosecution by getting in evidence without testifying. He complains when, in the end, the prosecution outmaneuvered him by selecting the option of presenting prior conviction evidence instead of objecting to the admission of hearsay evidence. What's sauce for the goose is sauce for the gander. Little cites no authority for the proposition that the prosecution can only avail itself of the remedy that favors the defendant." (*Id*. at p. 1377.)

9

Defendant claims *Little* and *Jacobs* do not apply because his statement to Johnson, that he took the $100 bill and the change, is inculpatory. Although this statement admits to theft, it was part of two pieces of exculpatory evidence. Defendant told the police that he took the $100 bill and the change, but he did not have and did not use a gun. Johnson's testimony about defendant's actions after returning from the liquor store are consistent with this statement. She related that defendant admitted taking both the change and the $100 bill, and that defendant did not have a gun that day. Both defendant's statement to the police and Johnson's testimony are exculpatory, by asserting defendant committed the lesser included offense of misdemeanor theft but did not commit the serious and violent felony of robbery. (See *People v. Webster* (1991) 54 Cal.3d 411, 443 ["Theft is a lesser included offense of robbery, which includes the additional element of force or fear"].)

While Johnson's testimony is exculpatory, the exculpatory part of her testimony, that defendant did not have a firearm, was based on her observation rather than any statement by defendant. Defendant's statement to the police that he did not have a weapon was an out-of-court exculpatory statement that would be subject to impeachment.[3] Although this case differs from *Little* and *Johnson* because defendant's hearsay statement was admitted by the prosecution, that distinction has no bearing on the admissibility of impeachment evidence.

"The general rule against impeaching one's own witness, however, was abrogated by the Legislature's passage of Evidence Code section 785 in the same year it passed Evidence Code section 1202. Evidence Code section 785 provides: 'The credibility of a

---

[3]     Since the convictions were admissible to impeach defendant's statement, any error in ruling that they were admissible to impeach Johnson's testimony is irrelevant, as we review the correctness of the trial court's decision rather than its reasoning in getting there. (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1004.)

10

witness may be attacked or supported by any party, including the party calling him.' Significantly, Evidence Code sections 785 and 1202 were not only passed in the same year; *they were passed as part of the same bill*. (See Stats. 1965, ch. 299, § 2, p. 1297, operative January 1, 1967.) ' "Both Acts were passed upon the same day and relate to the same subject matter. They are, therefore, according to a well settled rule of interpretation, to be read together, as if parts of the same Act . . . ." [Citation.]' [Citations.] Under these circumstances, we may safely infer that if the Legislature had intended to make Evidence Code sections 785 and 1202 mutually exclusive, it would have expressly done so. Read together as a single statute, these two sections allow a prosecutor to use a prior inconsistent statement to partially impeach a hearsay statement the prosecutor had previously introduced." (*People v. Osorio* (2008) 165 Cal.App.4th 603, 616-617.)

The California Supreme Court has found *Osorio* reached the right result. (*People v. Blacksher* (2011) 52 Cal.4th 769, 807-808.) So do we. While it addressed impeachment through prior inconsistent statements, its reasoning applies equally to impeachment through a prior conviction, which, like a prior inconsistent statement, is admissible under Evidence Code section 1202.

Defendant's statement to the police was properly impeached through the Instagram photograph of him holding a semiautomatic handgun. Since the prior convictions are a different type of impeaching evidence, it was not redundant and therefore less cumulative than if the same type of evidence had been introduced. While defendant's prior convictions could not be used to impeach Johnson's testimony, that testimony lent greater relevance to the prior convictions by bolstering the exculpatory out-of-court statement by defendant that the convictions were admitted to impeach.

Although defense counsel's examination of Johnson induced the prosecutor to get the impeaching convictions admitted, we reject defendant's claim that counsel's questioning constituted ineffective assistance. The case that defendant stole the money

11

from the liquor store was strong, as S. K. identified defendant as the perpetrator and defendant admitted stealing the money to the police. In this context, admitting the theft but claiming it was not robbery because defendant did not use a gun was a valid choice.[4] Bolstering defendant's statement to that effect with Johnson's testimony was a proper tactical choice that we will not second-guess in resolving defendant's ineffective assistance claim. (See *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance"].)

Defendant's theft conviction involves moral turpitude and dishonesty (*People v. Wheeler* (1992) 4 Cal.4th 284, 297) as does his conviction for providing false information to a police officer. The convictions were relevant to impeach his inculpatory statement that was bolstered by Johnson's testimony. Any prejudice was minimized by the fact that the evidence referred only to the bare fact of the convictions with nothing more. It was not an abuse of discretion to admit the prior convictions.

III

*Juror Dismissal*

Defendant contends the trial court violated his right to a jury trial by discharging a juror without good cause.

The trial court received the following note from Juror No. 10 during deliberations:

"I believe that one of the jurors was not honest during the jury selection process. During our deliberations, he stated that he lives in the area that the crime occured [*sic*].

---

**4** And a partially successful tactic, since the jury found a personal use of a firearm allegation not true.

12

Furthermore, he told us that he had been to the crime scene before. I feel this is impairing his judgment. The individual is our foreman."

The trial court next received the following note from the foreperson, Juror No. 5:

"One of the jury's [*sic*] has been to the crime sense [*sic*]. That juror offered knowledge of that area in deliberations and it was not disclosed during jury selection because the juror didn't think it was rellevent [*sic*]."

The trial court questioned Juror No. 5 outside the presence of the other jurors. Asked if he had been to Chimas Liquor Store before the trial, Juror No. 5 replied, "I cannot remember if I've been inside the store. I feel like maybe, not 100 percent sure." The trial court asked if the juror had ever been in the store. Juror No. 5 replied, "I don't know. If I have, it had to have been years ago. Nothing in the last five years. It had to be years ago." When the trial court asked what the juror told the jury about the liquor store, Juror No. 5 responded that he commented on the size of the parking lot. Juror No. 5 said to the jury that the juror had been to the parking lot before, but did not offer any other fact to the jury. Juror No. 5 also told the court that the juror's being there "doesn't determine the outcome of how I feel about the crime." Juror No. 5 had not previously told this to the court because the juror did not think "it was relevant to me being able to make an impartial decision on the outcome of the case."

The trial court next questioned the other jurors about what Juror No. 5 said during deliberations. Juror No. 10 said that Juror No. 5 told the jury he had been to the liquor store before. During a discussion of how long it would take S. K. to move around the store's counter, Juror No. 5 said, "Oh, I've been in there before. That counter is pretty long." According to Juror No. 1, Juror No. 5 said he was familiar with the store because he had gone to the Mexican restaurant next door, but Juror No. 5 never said he had been inside the liquor store. Juror No. 3 told the court that during discussions about the liquor store, Juror No. 5 brought up the store's layout and where the exit was. Juror No. 5 said he knew this because he had been in the store. Juror No. 4 related that Juror No. 5

13

asserted he had been to the liquor store and knew the size of the parking lot. Juror No. 6 stated that Juror No. 5 told the jury he had been to the liquor store and its parking lot, mentioning the layout of the place. Juror No. 5 also expressed strong feelings about the size of the store's parking lot.

The trial court found Juror No. 5 had not been "particularly candid" with the court. It found this juror's intonation and the manner in which he responded to be "a bit equivocal," and discharged Juror No. 5 for misconduct. After defendant moved for a mistrial, the trial court stated it "did not find Juror No. 5 to be credible. And I believe he misrepresented his knowledge to the Court." Finding this to be adequate grounds for discharging the juror, the trial court denied the mistrial motion.

"An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it." ' " (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.) "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors." (Pen. Code,[5] § 1089.)

Thus, a trial court has the authority to discharge a juror if it finds the juror is unable to perform his or her duty, which includes engaging in serious and willful misconduct. (*People v. Harris* (2013) 57 Cal.4th 804, 856.) The trial court must investigate for juror misconduct if there is information, which, if proven true, would

---

[5]     Further statutory references are to this code.

constitute good cause to doubt a juror's ability or willingness to perform the duties of a juror and would justify the removal of the juror. (*People v. Cleveland* (2001) 25 Cal.4th 466, 478.) The judge must make whatever inquiry is reasonably necessary to determine whether the juror should be discharged and whether the impartiality of the other jurors has been affected. (*Ibid.*)

While a trial court has the authority to conduct an appropriate investigation concerning whether there is good cause to discharge a juror, and to discharge a juror, the court also has the authority to take " 'less drastic steps [than discharge] where appropriate to deter any misconduct or misunderstanding it has reason to suspect.' " (*People v. Alexander* (2010) 49 Cal.4th 846, 926.) Additionally, the trial court need not discharge a juror where the misconduct is trivial or " 'trifling' " and could not have prejudiced the defendant. (*People v. Stewart* (2004) 33 Cal.4th 425, 510.)

We review the trial court's decision of whether to discharge or retain a juror or to take some other action for abuse of discretion. (*People v. Harris*, *supra*, 57 Cal.4th at p. 856.) " ' "Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's functions must be shown by the record to be a 'demonstrable reality.' The court will not presume bias, and will uphold the trial court's exercise of discretion on whether a seated juror should be discharged for good cause under section 1089 if supported by substantial evidence." ' " (*People v. Martinez* (2010) 47 Cal.4th 911, 943.)

Before trial, the court instructed the jurors not to consider any outside sources of information or to share such information with their fellow jurors, and the jury was to consider only evidence presented in court. Before deliberation, the trial court reiterated to the jury that it could base its decision "only on the evidence that has been presented to you in this trial."

Juror No. 5 disregarded these instructions and presented the jurors with his own facts about the crime scene based on his personal experience. The nature of the crime

15

scene is material to the case; misconduct regarding this information is serious. Although the juror claimed to have told the jury only about the size of the parking lot, the trial court found the juror was not credible. We defer to trial court credibility determinations. (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.) This is particularly true here, where Juror No. 5's claim that he told the jury only about the parking lot was contradicted by several of the jurors who were questioned by the court.

Juror No. 5 committed misconduct by bringing in outside facts during deliberation and was not credible when explaining this to the trial court. Discharge under these circumstances was well within the court's discretion.

## IV

### *Cumulative Error*

Defendant contends these claimed errors were cumulatively prejudicial. We have rejected defendant's claims of error. Thus, there is no prejudice to cumulate, and we reject this contention as well. (*People v. Bolin* (1998) 18 Cal.4th 297, 335.)

## V

### *Remand To Consider Striking Enhancement*

Defendant's sentence includes a five-year prior serious felony enhancement pursuant to Penal Code[6] section 677, subdivision (a). At the time defendant was sentenced, the court had no discretion to strike such an enhancement. (See former § 667, subd. (a) (as approved by voters, Gen. Elec. (Nov. 7, 2012)); former § 1385, subd. (b) (Stats. 2014, ch. 137, § 1).)

Senate Bill No. 1393, that went into effect on January 1, 2019, amends sections 667, subdivision (a) (Stats. 2018, ch. 423, § 64), and 1385, subdivision (b) (Stats. 2018,

---

**6**    All further section references are to the Penal Code.

ch. 1013, § 2), to allow a trial court to exercise its discretion to strike or dismiss a prior serious felony allegation for sentencing purposes.

Defendant argues the amendments apply retroactively to his case, which is not yet final. He asks us to remand the matter for the trial court to exercise its new discretion and to consider striking the prior serious felony enhancement. The People concede and we agree.

Unless there is evidence to the contrary, it is reasonable to infer amendments to statutes that either reduce the punishment for a crime or vest in the trial court the discretion to impose a lesser penalty, such as Senate Bill No. 1393, apply to all defendants whose judgments are not final as of the amendment's effective date. (*In re Estrada* (1965) 63 Cal.2d 740, 742; *People v. Garcia* (2018) 28 Cal.App.5th 961, 972-973.) There is nothing in the amendment suggesting the Legislature intended it to apply prospectively only, so the act applies retroactively to this case.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Nothing in the record indicates the trial court intended to impose the highest possible term or otherwise clearly indicates it would not exercise its discretion to strike. Accordingly, we agree with defendant that remand is appropriate in this case to allow the trial court to exercise its discretion as to whether to strike his prior serious felony enhancement.

17

## DISPOSITION

The matter is remanded to the trial court to consider exercising its discretion under sections 667 and 1385 to strike the prior serious felony conviction enhancement. After exercising this discretion, if appropriate, the trial court is directed to prepare an amended abstract of judgment reflecting its judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Butz, J.

/s/
Hoch, J.

18